IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| LUNAREYE, INC., | § § | |
| PLAINTIFF, | § § | |
| V. | § § | C.A. NO. 9:07-CV-114 |
| WEBTECH WIRELESS INC., | § § § | |
| DEFENDANT. | § § | |

## LUNAREYE'S BRIEF ON CLAIM CONSTRUCTION

In accordance with the Court Order dated September 9, 2009, LunarEye files its claim construction brief, and in support thereof would respectfully show the following:

### I. INTRODUCTION

**A.   Background**

The '035 Patent has already undergone extensive claim construction briefing in a prior lawsuit. Defendant is now seeking, for the first time, to impose radically different constructions to narrow the '035 Patent to the point where infringement would be difficult to prove. Defendant's proposed terms are contrary to the ordinary meaning of the words, the specifications of the patent, and will not assist a fact finder in understanding the terms. In fact, most of defendant's proposed constructions required tortured analysis and construction of common words, such as "trigger signal" and "when." In other areas defendant does not appear to be construing a word at all, but instead attempts to impose a narrow definition on an entire limitation of the '035 Patent. Defendant's proposed constructions lack merit, and should be rejected.

B.  **Technology Background**

LunarEye's prior briefing contains a technology background and overview of the '035 Patent. Rather than repeating it, LunarEye incorporates it herein. As was the case in the LunarEye v. IWI case, the defendant here is attempting to foist artificially narrow constructions on the terms of the '035 Patent. In order to provide some context for these proposed constructions, LunarEye offers an abridged technology synopsis.

The '035 Patent describes an apparatus capable of determining and transmitting a location record in response to certain "triggering actions." This functionality is provided by having a GPS unit, a controller, and a telemetry transmitter. As stated in the '035 Patent, "[u]pon receipt of a page or the occurrence of another triggering action, the invention determines its location using GPS signals and reports the location via cellular or satellite telemetry." [Ex A, Col. 1, L. 62-65].

The '035 Patent includes functionality to "select less than all" and "reorder" location data. Location data refers to the data output from a navigation receiver, such as a GPS receiver. This location data is then parsed – the "select less than all" limitation – and rearranged – the "reorder" limitation. Thus, the '035 Patent parses and reorders the location data output from the GPS receiver.

The '035 Patent also includes broad power management functionality by the use of a controller. This controller controls power to the GPS unit and the transmitter. As stated in the '035 Patent, the use of a controller allows for a range of power management schemes. One scheme would be to enable based on a triggering event (receipt of a page, panic button, car alarm, etc.), send a message, and disable in quick succession. Another would be for the

apparatus to periodically enable the apparatus to send messages based on the triggering events of vehicle movement and/or timers:

> The controller may have the ability to determine when the apparatus is moving. It can accomplish this by comparing the location data from the GPS location signal to the location data stored in the memory or by examining the velocity data reported by the GPS receiver. **In either case, the controller may leave the GPS receiver power on when the apparatus is moving. The controller can then cause the location data to be reported from time to time (e.g., every five minutes) through the cellular telemetry network by applying power to the cellular network transmitter for a short period of time.** The controller may keep the GPS receiver operational for a period of time after the apparatus stops moving. This allows the apparatus to provide continuous updates on its position while it is moving.

[Ex A, Col. 7, L. 55-62]. Thus, the '035 Patent discloses functionality of periodically enabling (applying power to the cellular network transmitter every five minutes to send a location record).

C.  **The Ex Parte Reexamination.**

Most of defendant's new proposed constructions stem from arguments that LunarEye narrowed the meaning of the claims during the reexamination. This is incorrect, as shown below.

Defendant initiated an ex parte reexamination of claim 3 of the '035 Patent, primarily relying on U.S. Patent No. 6,131,067 ("Girerd"), U.S. Patent No. 5,311,197 ("Sorden"), U.S. Patent No. 5,918,180 ("Dimino"), and U.S. Patent No. 5,777,580 ("Janky"). [Doc. 13].

On June 5, 2008, the USPTO issued a preliminary office action rejecting claim 3 based on Girerd (the "Office Action"). A true and correct copy of the Office Action is attached hereto as Exhibit B. In the Office Action the USPTO initially determined that Girerd operated to invalidate the '035 Patent, but that Sorden, Dimino, and Janky did not.

On August 5, 2008, LunarEye provided the USPTO with remarks related to certain alleged prior art that had been presented by defendant (the "Remarks"). A true and correct copy

of the Remarks is attached hereto as Exhibit C. LunarEye disagrees that it narrowed any claims of the '035 Patent by and through the Remarks, or otherwise. Indeed, as the USPTO confirmed the original claim of the '035 Patent, defendant's position does not make sense on its face.

In distinguishing the '035 Patent from Girerd, LunarEye did provide language relating to "location data," in the Remarks, which was consistent with the language of the patent itself. As stated by LunarEye, "location data" simply refers to data output from a navigation receiver, such as a GPS receiver. [Ex. C, p. 14]. As discussed in the '035 Patent, "[t]he Motorola® GT Plus Oncore™ GPS family of chips produces an digital output signal containing bits representing the latitude, longitude, height, velocity, and heading of the apparatus and the current time, as shown in FIG. 6." [Ex A, Col. 7, L. 5-9]. Thus, the "location data" would be the output signal in this embodiment. The '035 Patent makes clear that GPS units manufactured by other companies may be used in lieu of the Motorola product. [Ex. A, Col. 7, L. 9-11].

Defendant also claims that LunarEye made statements to the Patent Office that operate as prosecution disclaimer, but has not identified what these alleged statements were. LunarEye, in distinguishing the Girerd patent, did note that Girerd does not include a controller that can control, disable, or enable the cellular telephone. [Ex. B, p. 11]. This was not a prosecution disclaimer, but merely an observation that the prior art did not anticipate every element set forth in claim 3.

### D.  Prior Claim Construction.

This Court construed certain of the terms of the '035 Patent by and through the Court's October 3, 2006, Memorandum Opinion and Order construing claims terms of U.S. Patent 6,6484,035, attached hereto as Exhibit D.

The parties to this case adopted the prior construction without change as reflected in the February 27, 2008, Order on agreed claim terms, which is attached hereto as Exhibit E.

## II. LEGAL STANDARDS

The Court's September 9, 2009, Order states that the parties may assume that the court is familiar with the applicable law and need not include such matters in their briefing.

## III. LUNAREYE'S CONSTRUCTION OF DISPUTED TERMS

**A.     Claim 3.**

Claim 3 of the '035 Patent reads as follows (disputed claim terms are underlined for clarity, and previously construed terms are italicized for clarity):

A triggerable location-reporting apparatus comprising:

a location-signal generating device configured to produce a location signal including location data *when enabled*;

*a data selecting device for selecting less than all of the* location data *to include in the location signal*;

*a telemetry transmitter* coupled to the data selecting device configured to transmit the location signal *when enabled*; and

an *enable controller* configured *to enable* the location signal generating device and the *telemetry transmitter* when it receives a trigger signal and *to disable* the location-signal generating device and the *telemetry transmitter* after the *telemetry transmitter* transmits the location signal;

*wherein the data selecting device reorders the selected location data.*

LunarEye contends that none of these terms require construction. None of the proposed constructions would assist a fact finder to understand these claims. To the contrary, attempting

to redefine these terms to include limitations not present in the claim is improper under well-settled law. Defendant's proposed constructions contradict the clear and well understood meanings of these terms, and therefore are further improper. Accordingly, the Court should decline defendant's invitation to construe these terms.

1.  **"Location data"**

This term does not require construction. This term was not construed in the prior IWI case, nor was it construed in either this case or the related AirIQ and CalAmp cases. Defendant's only argument as to why this term should now be construed is based on the theory that LunarEye acted as a lexicographer during the reexamination and provided a new definition for "location data." This is incorrect. LunarEye did not demonstrate "clear intent" to deviate from the ordinary and accustomed meaning of the claim term "location data;" instead, LunarEye merely confirmed the existing language of the '035 Patent.

As stated above, "location data" simply refers to data output from a navigation receiver, such as a GPS receiver. As discussed in the '035 Patent, "[t]he Motorola® GT Plus Oncore™ GPS family of chips produces an digital output signal containing bits representing the latitude, longitude, height, velocity, and heading of the apparatus and the current time, as shown in FIG. 6." [Ex. A, Col. 7, L. 5-9]. Thus, the "location data" would be the output signal in this embodiment. The '035 Patent makes clear that GPS units manufactured by other companies may be used in lieu of the Motorola product. [Ex. A, Col. 7, L. 9-11].

During the reexamination, LunarEye successfully argued that the '035 Patent was not anticipated by Girerd. The examiner initially found that Girerd disclosed the select less than all and reorder limitations found in the '035 Patent. [Ex. B, p. 5-9]. In the Remarks, LunarEye stated "[a]s described in 6,484,035, i.e. the specification, the term 'location data' refers to the

data output from a navigation receiver, such as a GPS receiver. See, e.g., '035 at col. 3, ll. 6-9."
[Ex. C, p. 14]. LunarEye did not provide a new or narrower definition of location data. The specifications of the '035 Patent make clear that the apparatus includes functionality to select less than all and reorder location data (also called GPS data), as shown in Figure. 5:



Fig. 5

This is further supported by the language of the '035 Patent: "The GPS receiver acquires the GPS signals and determines a variety of position data regarding apparatus. The GPS receiver sends the GPS data to the controller. The controller buffers and reformats the GPS data into a form acceptable to a cellular network transmitter." [Ex. A, Col. 5, L. 66 – Col. 6, L. 5].

Thus, location data simply refers to the data output by (or received from) the GPS unit. As stated in the '035 Patent, the GPS unit is manufactured by a third-party (Motorola in the specification). This third-party component outputs the location data in a proprietary format, which is then parsed (select less than all) and reformatted (reordered). LunarEye has not deviated from this position at any time.

Defendant's proposed construction of "location data" is "data derived, computed, processed, or otherwise distilled from a raw data signal from a corresponding navigation system, such as GPS satellites or other sources." Defendant apparently adopted this definition from the

Remarks, page 14. While Plaintiff contends no construction is necessary, Plaintiff believes that if the Court is included to construe this claim the definition of "data output from a navigation receiver, such as a GPS receiver" is preferable for its simplicity. Defendant's proposed construction implicates a "raw data signal," which could be confusing in of itself.

2.  **Trigger Signal**.

This term is clear on its face and does not require construction. "Trigger signal" is exactly the kind of term that does not require elaborate, litigation-motivated wordsmithing that only confuses the fact finder. The fact that no party has ever believed, prior to now, that "trigger signal" needed construction proves this.

The '035 Patent states, in providing a summary of the invention, states "[u]pon receipt of a page **or the occurrence of another triggering action**, the invention determines its location using GPS signals and reports the location via cellular or satellite telemetry." [Ex, A, Col. 1, L. 62-64]. The patent includes several potential "triggering actions," including a page receiver (Col. 7, L. 23-28), a panic button (Col. 8, L. 53-60), a car alarm (Col. 8, L. 64-67), or reporting location from time-to-time while the apparatus is moving (Col. 7, L. 49-62). All of these represent actions that trigger the enable controller's power management functionality. That '035 Patent makes clear that there are a myriad of potential triggering events.

In the event the Court believes "trigger signal" requires construction, LunarEye suggests it simply mean "to signal the start of an event." This is consistent with the common meaning of the term "trigger signal," and utilizes defendant's proposed construction of "to start an action in another circuit . . . ."

Defendant's proposed construction of "[a] signal external to and received by the enable controller that causes a location-signal generating device to produce and transmit a location

signal that includes the requested location data" attempts to impose several new limitations on the '035 Patent.

First, defendant seeks to include a new limitation of a signal "external to and received by the enable controller." It is possible that the "triggering signal" would emanate from the enable controller, as in the situation where the apparatus is reporting location from time-to-time while the apparatus is moving. [Ex. A, Col. 7, L. 49-62]. It is correct that some of the preferred embodiments speak of "external triggers," but the preferred embodiment related to periodically reporting from time-to-time does not. It states "[t]he controller can then cause the location data to be reported from time to time (e.g., every five minutes) through the cellular telemetry network by applying power to the cellular network transmitter for a short period of time." [Ex. A, Col. 7, L. 55-62]. The Court relied on this very portion of the '035 Patent in denying IWI's motion for summary judgment on non-infringement. [January 5, 2007, Order denying IWI's motion for summary judgment of noninfringement]. Defendant appears to ignore this embodiment as it contends that the '035 Patent does not include periodic reporting as an embodiment.

Second, defendant seeks a new limitation that the "trigger signal" "causes a location-signal generating device to produce and transmit a location signal that includes the requested location data." Defendant has apparently created this definition out of whole clothe. The "trigger signal" relates to the enable controller performing its functionality, which is the enabling of the GPS unit and the transmitter. Defendant's construction would impose a new limitation: that a trigger signal causes the GPS unit to produce and transmit a location signal that includes the requested location date. In reality, the trigger signal only relates to the controller enabling the GPS unit and the transmitter. There is no trigger limitation for generating, producing, or transmitting a location signal. There is also no trigger limitation for disabling the GPS unit and

the transmitter. Under defendant's construction if the GPS unit had produced and stored a location record in memory prior to the triggering event, defendant would ostensibly contend the product would not infringe because the triggering event came after and did not "cause" the creation and storage of the "data to transmit" signal. The '035 Patent speaks directly to the storage of location records in memory:

> The controller may store the last location signal it receives from the GPS receiver. Consequently, if the apparatus receives a subsequent page and the GPS receiver cannot perform its function (because, for example, it is shielded from GPS satellite signals), the apparatus will report the stored position. The apparatus may also report the amount of time that has elapsed since the position information was stored.

[Ex. A, Col. 6, L. 42-49. Figure 5 also shows the memory functionality:



Fig. 5

Stated simply, triggering events set in motion the controller's "to enable" functionality, which is to enable the GPS unit and the transmitter. The '035 Patent is clear in this respect, and there is no basis for defendant's artificially narrow construction for the term "trigger signal."

If the Court is inclined to construe this term, LunarEye proposes the construction of "to signal the start of an event" for "trigger signal."

### 3. Configured to Enable Limitation.

Defendant next seeks construction of the first half of the fourth limitation of claim 3: "configured to enable the location-signal generating device and the telemetry transmitter when it receives a trigger signal." Most of the terms in this limitation, "to enable," "location signal-generating device," and "telemetry transmitter" have already been construed. As above, LunarEye contends no construction of this limitation is necessary, and that defendant's proposed construction is, at best, hopelessly confusing.

Defendant seeks to convert clear language into a grammatically tortured construction that will only confuse the fact finder. It appears defendant seeks to construe the word "when" to mean "after, and caused by." Defendant's extrinsic evidence for "when" is the phrase "we had just fallen asleep, when the bell rang." Under defendant's interpretation, this would mean "we had just fallen asleep after, and caused by, the bell ringing." Using defendant's interpretation, the fact finder would have to find that the ringing of the bell caused a person to fall asleep.

"When" is a common word and requires no definition. When does not include a causal component as suggested by defendant. LunarEye submits the fact finder will be able, without further construction, to understand the phrase "when it receives a trigger signal." Defendant's efforts to include a causal limitation here should be rejected out of hand.

### 4. . . . and to disable limitation.

Defendant next seeks construction of the second half of the fourth limitation of claim 3: "and to disable the location-signal generating device and the telemetry transmitter after the telemetry transmitter transmits the location signal." As with the first portion of this limitation, defendant's proposed construction attempts to add new limitations and otherwise corrupts a simple phrase that requires no construction.

Defendant's construction is: to disable the location-signal generating device and the telemetry transmitter so that the location-signal generating device and the telemetry transmitter do not continue to receive power and do not continue to remain fully capable of receiving a signal after the telemetry transmitter transmits the locations signal caused by receipt of the trigger signal." Defendant's proposed construction is hopelessly ambiguous, grammatically incorrect, and should be rejected for several reasons.

First, "enable," "disable," and "when enabled" have already been construed. "Enabled" means "fully operational and performing its function." "To enable" means "to place into a condition which is fully operational and performing its function." "To disable" means "to place into a condition which is not fully operational and performing its function." [Ex. E]. Defendant is simply trying to re-construe disable. Adding "do not continue to receive power and do not continue to remain fully capable of receiving a signal" is a direct assault on the existing construction, and is the exact same argument IWI advanced in the prior case. The Court's claim construction opinion from the IWI case is clear that "the claim language is broad enough to encompass an enable controller which turns the devices completely on and off, or a system in which at least some power is continuously applied to the devices." [Ex. D, p. 9-10]. The Court's observation is fully supported by intrinsic evidence. For instance, in one embodiment, the controller "puts the cellular transmitter and GPS receiver back to sleep" once the transmitter sends the location record. [Ex. A, Col. 6, L. 32-34]. This embodiment is also illustrated in Figure 3. It is clear from this embodiment alone that defendant's construction (which was also IWI's proposed construction) requiring the devices to "not receive power" is improper. The Court should reject the proposed construction insofar as it attempts to insert the previously rejected construction of "do not continue to receive power."

Second, defendant attempts to slip in a limitation of "do not remain fully capable of receiving a signal" in this phrase. It is unclear from defendant's construction what hardware component – the GPS unit or the transmitter – is not to remain fully capable of receiving a signal. Defendant provides no explanation as to this, what "receiving a signal" means, what signal is being referred to, or why this construction is not subsumed in the existing construction of "to disable." Thus, defendant's proposed construction would include at least two new constructions for "to disable:" (i) do not continue to receive power; (ii) do not continue to remain fully capable of receiving a signal. If defendant was not happy with the existing definitions, it should not have agreed to those terms in February of 2008.

Third, defendant's attempt to include another causal element should be rejected. Defendant's construction appears to require that the disabling functionality of the apparatus is "caused by the receipt of the trigger signal." The proposed construction is grammatically inaccurate, and it is difficult to understand what "caused by receipt of the trigger signal" is modifying. The '035 Patent does not include a second trigger that signals the disabling functionality of the enable controller. It simply states the controller disables the GPS unit and the transmitter after the transmitter sends the location signal. Including any language regarding the "trigger signal" here is inappropriate.

### 5. "After a single transmission"

Defendant appears to propose a third construction for the fourth limitation of the '035 Patent. It is not clear if this definition is an alternative definition, or in addition to the prior proposed constructions relating to "enable" and "disable." What is clear is defendant seeks to slip in a "after a single transmission" requirement that is absurd.

First, defendant's proposed construction here is not consistent with its prior proposed constructions of the exact same terms and phrases. Defendant uses "subsequently enables" instead of "after, and caused by." Defendant apparently cannot decide on a suitable construction of the word "when," as shown with these competing and inconsistent definitions.

Second, the clause "which then transmits a requested location signal" adds the new term "requested," which is not in the patent.

Third, defendant, without any explanation or support, seeks to include "after a single transmission, the enable controller disables the location signal generating device and the telemetry transmitter." This construction has no support whatsoever. It is nothing more than an inappropriate effort to create a new limitation for the '035 Patent so defendant can attempt to escape liability. The '035 Patent does not include any language whatsoever that states, suggests, infers, or implicates that "after a single transmission" the disabling functionality occurs. As stated in the '035 Patent, the apparatus can provide continuous updates while it is moving. [Ex. A, Col. 7, L. 59-62]. Under defendant's proposed construction the device would have to constantly enable, send a single transmission, disable, enable after, and caused by, the receipt of an external trigger, subsequently disable, remove power, etc. This construction should be summarily rejected.

6.   **Summary on terms and phrases of claim 3.**

None of defendant's proposed terms or phrases require construction. "Location data" arguably is fair game for discussion due to the Remarks, but the definition should simply be "data output from a navigation receiver, such as a GPS receiver."

"Trigger signal" also does not need construction. Defendant's proposed definition converts a term that has an ordinary and well-understood meaning to a dramatically narrower

limitation to the '035 Patent, especially with the requirement that the trigger be "external to" the controller, and that it "causes" the GPS unit to produce and transmit a location signal that includes the requested location data. Defendant's construction would rule out situation where the triggering event emanates from the controller's own firmware, and would insert the trigger limitation into the selecting and reordering of location data. Trigger signal only appears in one limitation of claim 3, and it should not be inserted elsewhere. If trigger signal is to be construed, LunarEye proposes "to signal the start of an event."

The remaining efforts to provide three competing constructions to the power management limitation of claim 3 should be rejected out of hand. The proposed constructions are nothing more than a thinly-veiled attempt to escape liability. "After, and caused by," "do not continue to receive power," and "after a single transmission" are all fictions created by defendant.

**B.    Claim 4**

Claim 4 adds the word "derived" to claim 3. As such, no independent discussion here is necessary, and LunarEye adopts is arguments above herein for all purposes.

**C.    Claim 17**

LunarEye no longer is pursuing claim 17 in this case.

Dated: October 2, 2009                                        Respectfully submitted,

/s/ E. Armistead Easterby
Edwin Armistead Easterby
Texas Bar No. 00796500
Email: aeasterby@williamskherkher.com
Williams Kherkher Law Firm.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone: (713) 230-2200
Facsimile: (713) 643-6226
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was served in compliance with the Federal Rules of Civil Procedure on all counsel of record on the 2nd day of October, 2009.

*/s/ E. Armistead Easterby*
Edwin Armistead Easterby
